**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RIVER LIGHT V, L.P. and TORY BURCH LLC, | ) ) | Case No. 16-cv-07921 |
| | ) | |
| Plaintiffs, | ) | **Judge Virginia M. Kendall** |
| | ) | |
| v. | ) | **Magistrate Judge Jeffrey T. Gilbert** |
| | ) | |
| LI PINGLONG, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS DDL20072008's AND DZTOK'S ORIGINAL ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIM**

Defendants DDL20072008 and DZTOK ("Defendants"), by undersigned counsel, file this

Answer and Affirmative Defenses to the Complaint (the "Complaint") filed by Plaintiffs River

Light V, L.P. and Tory Burch LLC ("Plaintiffs") and Counterclaim against Plaintiffs, and state as

follows:

**I. DEFENDANTS' ANSWER[1]**

**Complaint Paragraph 1:** This Court has original subject matter jurisdiction over the

claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28

U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this

action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because

the state law claims are so related to the federal claims that they form part of the same case or

controversy and derive from a common nucleus of operative facts.

**Answer to Paragraph 1:** Paragraph one contains conclusions of law, which require no

response from Defendants. To the extent any response is required, Defendants admit that

---

[1] Per local rule, Defendant's Answer sets out Plaintiff's allegations and Defendants' response. This does
not indicate an acceptance of Plaintiffs' allegations and any allegation not specifically admitted is denied.

Plaintiffs are attempting to assert claims under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and 28 U.S.C. § 1338 and that the Court has federal question jurisdiction over claims arising under these statutes. Defendants lack knowledge or information sufficient to form a belief as to whether the Court has supplemental jurisdiction over any state law claims Plaintiff asserts and therefore deny jurisdiction as to those claims.

**Complaint Paragraph 2:** Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain Names and the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Tory Burch's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Tory Burch's trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Tory Burch substantial injury in the State of Illinois.

**Answer to Paragraph 2:** Paragraph 2 contains conclusions of law, which require no response from Defendants. To the extent any response is required, Defendants lack sufficient information to form a belief as to the truth of any allegations concerning other defendants in this lawsuit and therefore deny those claims. Defendant further specifically deny Plaintiffs'

allegations that it directly targets business activities toward Illinois, that it "reach[ed] out to do business with Illinois residents," that Illinois residents can purchase products bearing counterfeit versions of Tory Burch's trademarks from Defendants, that they targeted sales from Illinois residents, that they sold products using counterfeit versions of Tory Burch's trademarks to residents of Illinois, that they are committing tortious acts in Illinois and that they have wrongfully caused Tory Burch substantial injury in Illinois.

**Complaint Paragraph 3:** This action has been filed by Tory Burch to combat online counterfeiters who trade upon Tory Burch's reputation and goodwill by selling and/or offering for sale counterfeit products, including footwear, handbags, accessories, clothing, and other products using counterfeit versions of Tory Burch's TORY BURCH, REVA, "TT" and other trademarks (the "Counterfeit Tory Burch Products"). Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling Tory Burch's genuine products, while actually selling Counterfeit Tory Burch Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Tory Burch Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Tory Burch is forced to file this action to combat Defendants' counterfeiting of Tory Burch's registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Tory Burch Products over the Internet. Tory Burch has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of

its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

**Answer to Paragraph 3:** Defendants lack sufficient information to form a belief as to the truth any allegations in the first, fifth and sixth sentences and therefore deny the allegations in these sentences. Defendants deny the remainder of Paragraph 3.

**Complaint Paragraph 4:** Tory Burch is an American lifestyle brand that embodies the personal style and sensibility of its CEO and designer Ms. Tory Burch. The collection, known for color, print and eclectic details, includes ready-to-wear apparel, shoes, handbags, accessories and beauty products (collectively, the "Tory Burch Products"). Art, music, travel, interiors and the designers' own stylish parents are inspirations for the collection.

**Answer to Paragraph 4:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 4 and therefore deny the allegations in Paragraph 4.

**Complaint Paragraph 5:** Tory Burch is a global business with more than 120 freestanding boutiques and a presence in over 3,000 department and specialty stores. In Illinois, Tory Burch Products are offered for sale at various stores, including Saks Fifth Avenue, Nordstrom, Bloomingdale's, and an eponymous boutique located in Chicago's famous Magnificent Mile shopping district. The brand's official website Toryburch.com, which launched in 2004, is the company's biggest store and is also home to the Tory Daily, an online magazine with all original content. Known for digital innovation, the company also has websites in Europe and Asia (including e-commerce sites in the UK, France, Italy, and Germany); a Webby-nominated app called the Tory Daily; and a robust social media presence. The Tory Burch brand has been recognized by the fashion industry with several awards, including the CFDA for Accessory Designer of the Year; Accessory Brand Launch of the Year from Accessories Council

of Excellence; and Rising Star award from Fashion Group International. Ms. Burch was also named one of Forbes' Most Powerful Women in the World. In April of 2014, Ms. Burch was appointed as an inaugural member of President Obama's Ambassadors for Global Entrepreneurship (PAGE) initiative, which was developed to assist in fostering future entrepreneurs by bringing them together with American businesspeople who have agreed to share their ideas, experience and time with this next generation. Ms. Burch also published her first book in 2014, "Tory Burch In Color," which was a New York Times Bestseller.

**Answer to Paragraph 5:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 5 and therefore deny the allegations in Paragraph 5.

**Complaint Paragraph 6:** Since the brand's founding in 2004, Tory Burch has continuously sold products under both the "TT" and TORY BURCH trademarks and variations thereof. Tory Burch has built substantial goodwill in the "TT" and TORY BURCH trademarks, and the brand is recognized worldwide as one of the most sought-after American fashion brands. The "TT" and TORY BURCH trademarks are famous and valuable assets of Tory Burch.

**Answer to Paragraph 6:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 5 and therefore deny the allegations in Paragraph 5.

**Complaint Paragraph 7:** In addition to common law trademark rights, Tory Burch holds registrations for its trademarks, including TORY BURCH, REVA, the "TT" logo and variations thereof in approximately 50 countries around the world, including with the United States Patent and Trademark Office (collectively, the "TORY BURCH Trademarks," a non-exclusive list of which is included below).

| Registration Number | Trademark | Depiction of Mark | Goods and Services |
|---|---|---|---|
| 3,029,795 | TT |  | For: Candles in class 004.<br><br>For: Jewelry in class 014.<br><br>For: Accessories, namely, handbags, umbrellas and cosmetic bags sold empty in class 018.<br><br>For: Housewares, namely towels in class 024.<br><br>For: Clothing, namely, shirts, tops, sweaters, pants, skirts, shorts, dresses, bathing suits, bikinis, sarongs, shoes, socks, belts, robes and headwear; outerwear, namely, scarves, jackets, vests and coats in class 025. |
| 3,386,532 | TORY BURCH | TORY BURCH | For: Retail clothing stores in class 035. |

| Registration Number | Trademark | Depiction of Mark | Goods and Services |
|---|---|---|---|
| 3,428,373 | TORY BURCH | TORY BURCH | For: Coats; dresses; footwear; headwear; jackets; pants; shirts; skirts; shorts; sleepwear; sweaters; swim wear; tops in class 025. |
| 3,428,374 | TORY BURCH | TORY BURCH | For: Cosmetic bags sold empty; handbags; umbrellas in class 018. |
| 3,428,816 | TORY BURCH | TORY BURCH | For: Jewelry in class 014. |
| 3,479,178 | REVA | REVA | For: Footwear in class 025. |
| 3,563,326 | TT | | For: A full line of handbags in class 018. For: A full line of women's clothing and footwear in class 025. |
| 3,758,631 | TORY BURCH | TORY BURCH | For: Eyewear and eyewear cases in class 009. |
| 3,814,500 | TORY BURCH | TORY BURCH | For: Candles in class 004. |

| Registration Number | Trademark | Depiction of Mark | Goods and Services |
|---|---|---|---|
| 3,918,505 | REVA | REVA | For: Handbags in class 018. |
| 3,920,528 | TT |  | For: Eyewear in class 009. |
| 4,029,068 | TT |  | For: Socks and robes in class 025. |
| 4,045,568 | TT |  | For: Eyewear and eyewear cases in class 009. |
| 4,129,090 | TT |  | For: Metal key chains in class 006. |
| 4,150,523 | TT |  | For: Leather key chains in class 018. |
| 4,205,354 | TORY BURCH | TORY BURCH | For: Cell phone cases; leather protective covers specially adapted for personal electronic devices; protective |

| Registration Number | Trademark | Depiction of Mark | Goods and Services |
|---|---|---|---|
| | | | covers and cases for cell phones, laptops and portable media players in class 009. |
| 4,213,404 | TT |  | For: Backpacks; beach bags; business card cases; coin purses; dog collars; dog leashes; overnight bags; pet clothing; wallets; wristlet bags in class 018. |
| 4,213,405 | TT |  | For: Cell phone cases; leather protective covers specially adapted for personal electronic devices; protective covers and cases for cell phones, laptops and portable media players in class 009. |
| 4,664,182 | TT |  | For: Watches in class 014. |

| Registration Number | Trademark | Depiction of Mark | Goods and Services |
|---|---|---|---|
| 4,242,007 | TT |  | For: Eyewear in class 009. |
| 4,459,720 | TT |  | For: Backpacks, cosmetic cases sold empty, handbag, leather pouches, and tote bags in class 018. |
| 4,317,165 | TT |  | For: Business card cases; cosmetic cases sold empty; handbags; leather pouches; luggage; purses; tote bags; umbrellas; wallets; wristlet bags in class 018. |
| 4,345,875 | TT |  | For: Belts; dresses; footwear; hats; jackets; pajamas; pants; scarves; shirts; skirts; sweaters; swimwear in class 025. |

| Registration Number | Trademark | Depiction of Mark | Goods and Services |
|---|---|---|---|
| 4,363,739 | TT |  | For: Jewelry in class 014. |
| 4,365,683 | TT |  | For: Belts; footwear in class 025. |
| 4,382,707 | TT |  | For: cell phone cases; eyewear; leather protective covers specially adapted for personal electronic devices; protective covers and cases for cell phones, laptops and portable media players; sunglasses in class 009. |
| 4,656,700 | TORY BURCH | TORY BURCH | For: Watches in class 014. |
| 4,345,879 | T |  | For: Handbags and wallets in class 018. |
| 4,345,880 | T |  | For: Footwear, scarves, shirts, and sweaters in class 025 |
| 4,345,878 | T |  | For: Jewelry in class 014. |

| Registration Number | Trademark | Depiction of Mark | Goods and Services |
|---|---|---|---|
| 4,345,877 | T |  | For: cell phone cases; eyewear; leather protective covers specially adapted for personal electronic devices; protective covers and cases for cell phones, laptops and portable media players; sunglasses in class 009. |

**Answer to Paragraph 7:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 7 and therefore deny the allegations in Paragraph 7.

**Complaint Paragraph 8:** True and correct copies of the United States Registration Certificates for the above-listed TORY BURCH Trademarks are attached hereto as **Exhibit 1**. The registrations for the TORY BURCH Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the TORY BURCH Trademarks constitute prima facie evidence of their validity and of Tory Burch's exclusive right to use the TORY BURCH Trademarks pursuant to 15 U.S.C. § 1057(b). The TORY BURCH Trademarks have been used exclusively and continuously by Tory Burch and its authorized licensees, some since at least as early as 2004.

**Answer to Paragraph 8:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 8 and therefore deny the allegations in Paragraph 8.

**Complaint Paragraph 9:** The TORY BURCH Trademarks are owned exclusively by Tory Burch and are displayed extensively on Tory Burch Products and in Tory Burch marketing and promotional materials. Tory Burch, together with its authorized licensees, extensively markets the Tory Burch brand in the United States and around the world and has spent millions of dollars in marketing since 2004 to build the Tory Burch brand. These efforts have resulted in substantial sales of Tory Burch Products, as well as invaluable consumer goodwill.

**Answer to Paragraph 9:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 9 and therefore deny the allegations in Paragraph 9.

**Complaint Paragraph 10:** Tory Burch's innovative marketing and product design have enabled Tory Burch to achieve widespread recognition and fame, and have made the TORY BURCH Trademarks some of the most well-known marks in the fashion industry. Since at least 2004, Tory Burch has operated a website at toryburch.com, which has received tens of millions of visitors. Sales of Tory Burch Products at toryburch.com represent a significant portion of Tory Burch's business. The toryburch.com website features proprietary content, images and designs exclusive to Tory Burch. Tory Burch is also popular on social media platforms with over 1,669,142 Facebook likes, over 387,000 followers on Twitter, and more than 1,200,000 followers on Instagram.

**Answer to Paragraph 10:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 10 and therefore deny the allegations in Paragraph 10.

**Complaint Paragraph 11:** The Tory Burch brand has also become well-known as being a favorite of internationally known celebrities, many of whom are featured in photographs wearing Tory Burch Products. Widespread media coverage for Tory Burch in multiple fashion and entertainment magazines has occurred in the U.S. and elsewhere, including articles in such

upscale, luxury magazines such as *Vogue*, *InStyle*, *Marie Claire*, and *Elle*. Articles about the Tory Burch brand have also been featured in *Time Magazine* and *New York Times Style Magazine*.

**Answer to Paragraph 11:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 11 and therefore deny the allegations in Paragraph 11.

**Complaint Paragraph 12:** Media exposure for Tory Burch is not limited to print periodicals. Tory Burch Products have been featured on many television shows broadcasted around the world. In January 2012, Tory Burch was featured on *CBS Sunday Morning*, which called the brand a "fashion phenomenon," well-known by the public for the "distinctive 'double-T' logo." In 2005, Tory Burch Products were featured on the Oprah Winfrey Show, where Ms. Winfrey hailed Tory Burch as "the next big thing" in fashion. Since that time, the widespread fame, outstanding reputation, and significant goodwill associated with the TORY BURCH Trademarks have made them invaluable assets of Tory Burch.

**Answer to Paragraph 12:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 12 and therefore deny the allegations in Paragraph 12.

**Complaint Paragraph 13:** Tory Burch maintains strict quality standards, and Tory Burch Products are inspected and approved by Tory Burch or an agent of Tory Burch prior to distribution and sale. Consequently, consumers and potential consumers around the world associate the TORY BURCH Trademarks with footwear, handbags, apparel, accessories, and related products constructed from the highest-quality materials, style, and workmanship. The TORY BURCH Trademarks have achieved widespread fame, are widely accepted by the public, are enormously popular, and have become some of the most widely-recognized trademarks in the fashion industry. As such, the TORY BURCH Trademarks are inherently distinctive and famous.

**Answer to Paragraph 13:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 13 and therefore deny the allegations in Paragraph 13.

**Complaint Paragraph 14:** Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit Tory Burch Products to consumers within the United States, including the State of Illinois.

**Answer to Paragraph 14:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 14 concerning other defendants in this matter and therefore deny those allegations in Paragraph 14. Defendants admit they reside in the People's Republic of China. Except as expressly admitted, Defendants deny the remaining allegations directed toward them in Paragraph 14.

**Complaint Paragraph 15:** On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the TORY BURCH Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Tory Burch to learn Defendants' true identities and the exact interworking of their massive counterfeit network. In the event that

Defendants provide additional credible information regarding their identities, Tory Burch will take appropriate steps to amend the Amended Complaint.

**Answer to Paragraph 15:**  Defendants deny the allegations in Paragraph 15.

**Complaint Paragraph 16:**  The success of the Tory Burch brand has resulted in significant counterfeiting. Consequently, Tory Burch has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Tory Burch has identified thousands of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Tory Burch Products to consumers in this Judicial District and throughout the United States. Despite Tory Burch's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

**Answer to Paragraph 16:**  Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 16 concerning other defendants in this matter or Tory Burch and therefore deny those allegations in Paragraph 16.  Defendants deny the allegations in Paragraph 16 as they specifically concern them.

**Complaint Paragraph 17:** Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the TORY BURCH word mark (or variations thereof) into the URL, and the Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

**Answer to Paragraph 17:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 17 concerning other defendants in this matter and therefore deny those allegations in Paragraph 17. Defendants deny the allegations in Paragraph 17 as they specifically concern them.

**Complaint Paragraph 18:** Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Tory Burch has not licensed or authorized Defendants to use its TORY BURCH Trademarks, and none of the Defendants are authorized retailers of genuine Tory Burch Products.

**Answer to Paragraph 18:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 18 concerning other defendants in this matter and therefore deny those allegations in Paragraph 18. Defendants deny the allegations in Paragraph 18 as they specifically concern them.

**Complaint Paragraph 19:** Many Defendants also deceive unknowing consumers by using the TORY BURCH Trademarks without authorization within the content, text, and/or meta

tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Tory Burch Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Tory Burch Products. Other Defendants only show TORY BURCH Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Tory Burch Products.

**Answer to Paragraph 19:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 19 concerning other defendants in this matter and therefore deny those allegations in Paragraph 19. Defendants deny the allegations in Paragraph 19 as they specifically concern them.

**Complaint Paragraph 20:** Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

**Answer to Paragraph 20:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 20 concerning other defendants in this matter and therefore deny those allegations in Paragraph 20. Defendants deny the allegations in Paragraph 20 as they specifically concern them.

**Complaint Paragraph 21:** Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Tory Burch Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Tory Burch Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from Tory Burch's official website www.toryburch.com.

**Answer to Paragraph 21:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 21 concerning other defendants in this matter and therefore deny those allegations in Paragraph 21. Defendants deny the allegations in Paragraph 21 as they specifically concern them.

**Complaint Paragraph 22:** In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

**Answer to Paragraph 22:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 22 concerning other defendants in this matter and therefore deny those allegations in Paragraph 22. Defendants deny the allegations in Paragraph 22 as they specifically concern them.

**Complaint Paragraph 23:** Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Tory Burch's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

**Answer to Paragraph 23:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 23 concerning other defendants in this matter and therefore deny those allegations in Paragraph 23. Defendants deny the allegations in Paragraph 23 as they specifically concern them.

**Complaint Paragraph 24:** Defendants, without any authorization or license from Tory Burch, have knowingly and willfully used and continue to use the TORY BURCH Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Tory Burch Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Tory Burch Products into the United States, including Illinois.

**Answer to Paragraph 24:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 24 concerning other defendants in this matter and therefore deny those allegations in Paragraph 24. Defendants deny the allegations in Paragraph 24 as they specifically concern them.

**Complaint Paragraph 25:** Defendants' use of the TORY BURCH Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Tory Burch Products, including the sale of Counterfeit Tory Burch Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Tory Burch.

**Answer to Paragraph 25:** Defendants lack sufficient information to form a belief as to the truth of any allegations in Paragraph 25 concerning other defendants in this matter and therefore deny those allegations in Paragraph 25. Defendants deny the allegations in Paragraph 25 as they specifically concern them.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

**Complaint Paragraph 26:** Tory Burch hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25.

**Answer to Paragraph 26:** Defendants hereby re-allege and incorporate by reference the responses set forth in paragraphs 1 through 25.

**Complaint Paragraph 27:** This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered TORY BURCH Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of the Counterfeit Tory Burch Products. The TORY BURCH Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Tory Burch Products sold or marketed under the TORY BURCH Trademarks.

**Answer to Paragraph 27:** Defendants admit this is a trademark infringement action. Defendants lack sufficient information to form a belief as to the truth of the remaining allegations and therefore deny those allegations in Paragraph 27.

**Complaint Paragraph 28:** Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the TORY BURCH Trademarks without Tory Burch's permission.

**Answer to Paragraph 28:** Defendants deny the allegations in Paragraph 28.

**Complaint Paragraph 29:** Tory Burch is the exclusive owner of the TORY BURCH Trademarks. Tory Burch's United States Registrations for the TORY BURCH Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Tory Burch's rights in the TORY BURCH Trademarks and are willfully infringing and

22

intentionally using counterfeits of the TORY BURCH Trademarks. Defendants' willful, intentional and unauthorized use of the TORY BURCH Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Tory Burch Products among the general public.

**Answer to Paragraph 29:** Defendants do not have sufficient information to form a belief as to whether Tory Burch is the exclusive owner of the TORY BURCH Trademarks and whether those trademarks are in full force and effect and therefore deny those allegations in Paragraph 29. Defendants deny the remainder of the allegations in Paragraph 29.

**Complaint Paragraph 30:** Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**Answer to Paragraph 30:** Defendants deny the allegations in Paragraph 30.

**Complaint Paragraph 31:** Tory Burch has no adequate remedy at law, and if Defendants' actions are not enjoined, Tory Burch will continue to suffer irreparable harm to its reputation and the goodwill in the well-known TORY BURCH Trademarks.

**Answer to Paragraph 31:** Defendants deny the allegations in Paragraph 31.

**Complaint Paragraph 32:** The injuries and damages sustained by Tory Burch have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Tory Burch Products.

**Answer to Paragraph 32:** Defendants deny the allegations in Paragraph 32.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

**Complaint Paragraph 33:** Tory Burch hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 32.

**Answer to Paragraph 33:** Defendants hereby re-allege and incorporate by reference the responses set forth in paragraphs 1 through 32.

**Complaint Paragraph 34:** Defendants' promotion, marketing, offering for sale and sale of Counterfeit Tory Burch Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association between Tory Burch and Defendants, or the origin, sponsorship, or approval of Defendants' Counterfeit Tory Burch Products. By using the TORY BURCH Trademarks in connection with the sale of Counterfeit Tory Burch Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Tory Burch Products.

**Answer to Paragraph 34:** Defendants' deny the allegations in Paragraph 34.

**Complaint Paragraph 35:** Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Tory Burch Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

**Answer to Paragraph 35:** Defendants deny the allegations in Paragraph 35.

**Complaint Paragraph 36:** Tory Burch has no adequate remedy at law and, if Defendants' actions are not enjoined, Tory Burch will continue to suffer irreparable harm to its reputation and the goodwill of its Tory Burch brand.

**Answer to Paragraph 36:** Defendants deny the allegations in Paragraph 36.

## COUNT III
## CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING ANY OF THE TORY BURCH TRADEMARKS

**Complaint Paragraph 37:** Tory Burch hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 36.

**Answer to Paragraph 37:** Defendants hereby re-allege and incorporate by reference the responses set forth in paragraphs 1 through 36.

**Complaint Paragraph 38:** Tory Burch is the exclusive owner of the TORY BURCH Trademarks. Tory Burch's United States Registrations for the TORY BURCH Trademarks (Exhibit 1) are in full force and effect. Additionally, the TORY BURCH Trademarks are distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

**Answer to Paragraph 38:** Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 38 and therefore deny the allegations in Paragraph 38.

**Complaint Paragraph 39:** Upon information and belief, Defendants operating a Defendant Domain Name incorporating any of the TORY BURCH Trademarks have acted with bad faith intent to profit from the unauthorized use of the TORY BURCH Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the distinctive and famous TORY BURCH Trademarks.

**Answer to Paragraph 39:** Defendants deny the allegations in Paragraph 39.

**Complaint Paragraph 40:** Defendants have no intellectual property rights in or to any of the TORY BURCH Trademarks.

**Answer to Paragraph 40:** Defendants admit Paragraph 40 that they do not own any intellectual property rights in any of the Tory Burch Trademarks.

**Complaint Paragraph 41:** Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

**Answer to Paragraph 41:** Defendants deny the allegations in Paragraph 41.

**Complaint Paragraph 42:** Tory Burch has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating the TORY BURCH Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Tory Burch.

**Answer to Paragraph 42:** Defendants deny the allegations in Paragraph 42.

**COUNT IV**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, *et seq.*)**

**Complaint Paragraph 43:** Tory Burch hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

**Answer to Paragraph 43:** Defendants hereby re-allege and incorporate by reference the responses set forth in paragraphs 1 through 42.

**Complaint Paragraph 44:** Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Tory Burch Products as those of Tory Burch, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Tory Burch Products, representing that their Counterfeit Tory Burch Products have Tory Burch's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

**Answer to Paragraph 44:** Defendants deny the allegations in Paragraph 44.

**Complaint Paragraph 45:** The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

**Answer to Paragraph 45:** Defendants deny the allegations in Paragraph 45.

**Complaint Paragraph 46:** Tory Burch has no adequate remedy at law, and Defendants' conduct has caused Tory Burch to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Tory Burch will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**Answer to Paragraph 46:** Defendants deny the allegations in Paragraph 46.

**Complaint Prayer:** WHEREFORE, Tory Burch prays for judgment against Defendants as follows: 1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from: a. using the TORY BURCH Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a Tory Burch Product or is not authorized by Tory Burch to be sold in connection with the TORY BURCH Trademarks; b. passing off, inducing, or enabling others to sell or pass off any product as a Tory Burch Product or any other product produced by Tory Burch, that is not a Tory Burch Product, or not produced under the authorization, control, or supervision of Tory Burch and approved by Tory Burch for sale under the TORY BURCH Trademarks; c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Tory Burch Products are those sold under the authorization, control or supervision of Tory Burch, or are sponsored by, approved by, or otherwise connected with Tory Burch; d. further infringing the TORY BURCH Trademarks and damaging Tory Burch's goodwill;

e. otherwise competing unfairly with Tory Burch in any manner; and f. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Tory Burch, nor authorized by Tory Burch to be sold or offered for sale, and which bear any Tory Burch trademark, including the TORY BURCH Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof; 2) Entry of an Order that, at Tory Burch's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to River Light V, L.P., and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Tory Burch's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Tory Burch's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable; 3) Entry of an Order that, upon Tory Burch's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, and Alibaba, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:  a. disable and cease providing

services being used by Defendants, currently or in the future, to engage in the sale of goods using the Tory Burch Trademarks; b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Tory Burch Trademarks; and c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index; 4) That Defendants account for and pay to Tory Burch all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that the amount of damages for infringement of the TORY BURCH Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117; 5) In the alternative, that Tory Burch be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the TORY BURCH Trademarks and $100,000 per domain name incorporating any of the TORY BURCH Trademarks pursuant to 15 U.S.C. § 1117(d); 6) That Tory Burch be awarded its reasonable attorneys' fees and costs; and 7) Award any and all other relief that this Court deems just and proper.

**Answer to Complaint Prayer:** Defendants deny that Plaintiffs are entitled to any of the relief requested in their Prayer for Relief.

## II. DEFENDANT'S AFFIRMATIVE DEFENSES

By alleging the affirmative defenses set forth below, Defendants do not waive any argument regarding the burden of proof for these matters, and do not admit that they have the burden of proof and/or the burden of persuasion with respect to these matters:

1. Any allegations not specifically admitted by Defendants are denied.

2. To the extent any of the foregoing responses constitute affirmative defenses, they are incorporated herein by reference for all purposes.

3.      Plaintiff fails to state a claim upon which relief can be granted.

4.      Additionally and/or alternatively, and upon information and belief, Plaintiff has failed to mitigate its damages.

### III. DEFENDANTS' COUNTERCLAIMS

Defendants DDL20072008 and DZTOK (collectively "Counter-Plaintiffs") file this Original Counterclaim against Plaintiffs, and respectfully assert the following:

**A.      Parties**

1.      Counter-Plaintiff DDL20072008 is a commercial internet store located in the People's Republic of China.

2.      Counter-Plaintiff DZTOK is a commercial internet store located in the People's Republic of China.

3.      Counter-Defendant River Light V, L.P. is, on information and belief, a limited partnership organized in the United States.

4.      Counter-Defendant Tory Burch LLC is, on information and belief, a limited liability company organized in the United States.

**B.      Jurisdiction and Venue**

5.      This is an action for wrongful seizure under the Lanham Act, 15 U.S.C. § 1116(d)(11).  Accordingly, this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.

6.      Venue in this Court is proper because Defendants raise these claims as counterclaims.

**C.      Factual Background**

7.      Counter-Plaintiffs are commercial internet stores located in the People's Republic of China.  Counter-Plaintiffs are defendants in the above-captioned lawsuit wherein Tory Burch, a "global business with more than 120 freestanding boutiques and a presence in over 3,000

department and specialty stores," is seeking a minimum of $2,000,000 each from 350 entities and/or individuals that it seeks to litigate in one proceeding.

8.      As of August 9, 2016, Counter-Plaintiffs were not selling, advertising, marketing, distributing, stocking, offering to sell, and/or otherwise producing and disseminating products bearing versions of the TORY BURCH Trademarks.[2]  As of August 9, 2016, Counter-Plaintiffs had not advertised and/or marketed any products allegedly bearing versions of the Tory Burch Trademarks.  Counter-Plaintiffs have never sold products bearing versions of the TORY BURCH Trademarks.

9.      Despite this, on August 9, 2016, Plaintiff moved the Court for an *ex parte* temporary restraining order seeking to freeze Counter-Plaintiffs' PayPal accounts.  It argued that, at the time it filed its motion and supporting brief, Counter-Plaintiffs were "promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit Tory Burch products."  Counter-Defendant's Memorandum in Support of Plaintiffs' Ex Parte Motion for Entry of a Temporary Restraining Order, Including a Temporary Injunction, a Temporary Transfer of the Defendant Domain Names, a Temporary Asset Restraint, and Expedited Discovery, Dkt. No. 11, p. 1.  Further, Counter-Defendants alleged Counter-Plaintiffs were an "interrelated group of counterfeiters."  *Id*. at p. 4.  Counter-Defendants achieved restraint of Counter-Plaintiffs' assets based on the allegation that it needed such restraint "so that Tory Burch's right to an equitable accounting of Defendants' profits from sales of Counterfeit Tory Burch Products is not impaired."  *Id*. at p. 12.  Counter-Defendants' Motion notes that their amended Complaint seeks that Counter-Plaintiffs' "account for and pay to Tory Burch *all profits realized by Defendants* by reason of Defendants' unlawful acts."  *Id*. at p. 13 (emphasis added).

---

[2] This term is defined in the Preliminary Injunction Order.  *See* Dkt. No. 37.

10.     Counter-Defendants' Motion was based on sworn "proof," specifically the Declaration of Jenna Curtis, dated August 5, 2016.  Dkt. No. 13.  Ms. Curtis' declaration states that Counter-Plaintiffs operated an internet store "offering for sale and selling counterfeit products."  *Id*. at ¶ 15.  Ms. Curtis' declaration further states that, after analyzing each of the "Defendant Internet Stores" she or someone working under her direction "determined that Counterfeit Tory Burch Products were being offered for sale . . . ." (presumably at the time of Ms. Curtis' declaration).  Further, Ms. Curtis stated that Counter-Plaintiffs design their two stores so as to appear as "authorized online retailers, outlet stores, or wholesalers" and incorporate the "TORY BURCH word mark . . . ."  *Id*. at ¶ 17.  Finally, Ms. Curtis alleged that Counter-Plaintiffs were interrelated with the 350-plus other defendants in this matter.  *Id*. at ¶ 21.

11.     Counter-Defendants relied on these allegations in support of obtaining their ex parte preliminary injunction as well.  *See* Dkt. 31, p. 3 ("By virtue of this Court's entry of the TRO, it has already found that the above requirements have been satisfied.").

**D.      Wrongful Seizure Under the Lanham Act and Wrongful TRO and Preliminary Injunction.**

12.     Counter-Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 11.

13.     At the time Counter-Defendants offered sworn "proof" to this Court in order to obtain an *ex parte* order freezing Counter-Plaintiffs' PayPal accounts, that "proof" was not accurate.  As of August 9, 2016, Counter-Defendants were not selling, advertising, marketing, distributing, stocking, offering to sell, and/or otherwise producing and disseminating products bearing versions of the TORY BURCH Trademarks.  Further, Counter-Plaintiffs never sold any "Counterfeit Tory Burch Products."  With no sales, there can be no profits.  The allegations to freeze Counter-Plaintiffs' assets focused wholly on Counter-Defendants' allegations they were

32

entitled to an accounting of profits. Therefore the Counter-Defendants' conduct during the course of their seeking, obtaining, and executing an ex parte order freezing Counter-Defendants' PayPal accounts was a wrongful seizure under the Lanham Act.

14.     As a result of Counter-Defendants' wrongful conduct and resulting wrongful seizure under the Lanham Act, Counter-Plaintiffs were damaged and seek redress for those damages. Counter-Plaintiffs seek an award of damages caused by the wrongful seizure, as well as an award of reasonable and necessary attorney's fees. Counter-Plaintiffs further seek an increase in the bond amount because the present bond amount ($10,000) is insufficient to cover any award of damages and attorney's fees.

15.     Further, Counter-Defendant's conduct in obtaining both the temporary restraining order and the preliminary injunction show the temporary restraining order and temporary injunction were wrongly entered as to Counter-Plaintiffs.

### Prayer for Relief

Defendants pray the following relief:

A.     for a judgment that Plaintiffs take nothing by their claims against Defendants;

B.     for a dismissal of Plaintiffs' claims against Defendants with prejudice;

C.     for a judgment that Counter-Plaintiffs recover against Counter-Defendants on their Counterclaim;

D.     for an award of Defendants' attorney fees according to law, including 15 U.S.C. 1116;

E.     for Defendants costs;

F.     for pre- and post-judgment interest according to law;

G.      and an increase of the bond amount to at least $100,000.

H.     for such other and further relief as the Court deems just and proper.

Dated:  October 12, 2016

Respectfully submitted,

By:  */s/ Nathaniel St. Clair, II*
     Nathaniel St. Clair, II
     Illinois State Reg. No. 6284414
     Texas State Bar No. 24071564
     JACKSON WALKER LLP
     2323 Ross Avenue, Suite 600
     Dallas, Texas 75201
     (214) 953-5948 – Tel.
     (214) 953-5822 – Fax.
     Email:  nstclair@jw.com

     Michael P. Adams
     *Application for Admission Forthcoming*
     Texas State Bar No. 00872050
     JACKSON WALKER LLP
     100 Congress Avenue, Suite 1100
     Austin, Texas 78701
     (512) 236-2304 – Tel.
     (512) 391-2127 – Fax.
     Email:  madams@jw.com

     ATTORNEYS FOR DEFENDANTS
     DDL20072008 and DZTOK

**Local Counsel:**

Roy G. Davis
Davis & Campbell L.L.C.
333 S. Wabash, Suite 2700
Chicago, IL  60604
312-995-7110 – Tel.
rgdavis@dcamplaw.com
IL Bar No.  0592692

ATTORNEYS FOR DEFENDANTS
DDL20072008 and DZTOK

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of October, 2016, I electronically filed the foregoing Defendants DDL20072008 and DZTOK'S Answer and affirmative defenses to Plaintiff's Complaint with the Clerk of the Court using the ECF system for service upon all parties registered to receive service through the ECF system, including as follows:

Kenneth W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
(312) 360-0080 – Tel.
(312) 360-9315 – Fax.
Email: kguynn@gbc.law
Email: aziegler@gbc.law
Email: jgaudio@gbc.law
Email: jbloodgood@gbc.law

Respectfully submitted,

*/s/ Nathaniel St. Clair, II*
Nathaniel St. Clair, II
***Attorney for Defendants***
***DDL20072008 and DZTOK***